**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ANGELA S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV754 |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Angela S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 14 (Commissioner's Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 7 at 1.)

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 160-66), alleging a disability onset date of March 1, 2022 (see Tr. 160).[2] Upon denial of that application initially (Tr. 71-81, 115-19) and on reconsideration (Tr. 82-96, 121-28), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (see Tr. 14 (reflecting that "[Plaintiff] filed a written request for hearing received on February 1, 2024").[3] Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 32-70.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-31.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 158-59), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since May 12, 2022, the application date.

[2] Notwithstanding Plaintiff's alleged onset date of March 1, 2022 (see Tr. 160), she lacked eligibility for SSI benefits until her application date of May 12, 2022 (see Tr. 14). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

[3] The record does not contain a copy of Plaintiff's request for a hearing.

2. [Plaintiff] has the following severe impairments: obesity, degenerative disc disease, osteoarthritis of the left knee, diabetes mellitus II, [] depressive disorder, and anxiety disorder.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [she] could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. [She] could frequently stoop, occasionally kneel, crouch, and crawl. [She] should avoid all exposure to unprotected heights. [S]he could perform simple[,] routine, repetitive tasks, simple, work-related decisions, and frequently interact with supervisors, coworkers, and the public.

. . .

5. [Plaintiff] is capable of performing past relevant work as a fast-food worker. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

In the alternative, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [she] also can perform.

. . .

6. [Plaintiff] has not been under a disability, as defined in the . . . Act, since May 12, 2022, the date the application was filed.

(Tr. 16-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less

than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

[4] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

**B. Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to apply the correct standard when evaluating [Plaintiff]'s allegations of pain" (Docket Entry 11 at 5 (bold font and block formatting omitted)); and

2) "the ALJ erred by failing to properly evaluate the medical opinion evidence" (id. at 10 (bold font and block formatting omitted)).

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-17.)

### 1. Plaintiff's Subjective Symptom Reports

Plaintiff's first assignment of error maintains that "[t]he ALJ erred by failing to apply the correct legal standard when evaluating [Plaintiff]'s allegations of pain." (Docket Entry 11 at 5 (bold font and block formatting omitted).) More specifically, Plaintiff notes that "th[e] evidence and testimony indicates[ that Plaintiff] has been managing chronic pain with her left knee, has pursued treatment for th[at] knee pain, . . . and continues to suffer with a significant degree of pain" (id. at 6-7), but that, "despite th[at] testimony and evidence, the ALJ determined that [Plaintiff]'s condition was not as limiting as alleged" (id. at 7; see also id. at 5 (describing Plaintiff's statements and testimony regarding her knee pain and resulting difficulty standing and walking (citing Tr. 44, 48-50, 61, 210-11, 215, 233)), 5-6 (summarizing medical evidence Plaintiff alleges supports her complaints of severe knee pain and limitations in standing and walking (citing Tr. 313-14, 338, 344, 564, 600, 724-26, 827-29, 835, 843, 849)).) In particular, Plaintiff points out that the ALJ stated that "'the **objective findings** showed that [Plaintiff] is likely to have some pain and limitations, but not to the extent alleged[]'" (id. at 7 (quoting Tr. 20) (emphasis added by

Plaintiff)), as well as that the "RFC determination is 'supported by **all of the objective evidence** in the record'" (id. (quoting Tr. 25) (emphasis added by Plaintiff)), and thus faults the ALJ for "requiring objective evidence to substantiate [Plaintiff]'s alleged degree of pain and to evaluate her subjective complaints regarding her left knee pain" (id.).

Plaintiff additionally contends that the United States Court of Appeals for the Fourth Circuit "recently addressed th[at] very issue" and "noted that, '[d]espite a history of pushback on subjective-statement reliance by the SSA, th[e Fourth Circuit] allows a claimant to rely exclusively on subjective evidence in proving that her symptoms are so continuous and/or severe that they prevented her from working.'" (Id. (brackets and ellipsis omitted) (quoting Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023)); see also id. (quoting Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir. 2020), for proposition that "ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence").) Plaintiff further deems "[t]he ALJ's error . . . potentially outcome determinative" because, "by failing to adequately evaluate [Plaintiff]'s pain, the ALJ also failed to perform a proper function-by-function evaluation of all the contested and relevant functions[,]" such as "how long

[Plaintiff] is capable of maintaining a walking or standing position." (Id. at 9 (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) In that regard, Plaintiff notes that ""other courts have found[ that] the frequency of position change may be disabling in and of itself and the ALJ should discuss th[at] issue in the decision" (id. (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished))). Plaintiff also emphasizes that "a reduction to the sedentary range of exertion would render [her] disabled pursuant to Medical Vocational Guideline 201.12." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.12).) For the reasons that follow, Plaintiff's assertions miss the mark.

The Commissioner's regulations adopt a two-part test for evaluating a claimant's statements about symptoms. See 20 C.F.R. § 416.929; see also Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("SSR 16-3p"). First, the ALJ must determine whether a claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [the claimant]'s symptoms, such as pain." 20 C.F.R. § 416.929(b); see also SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source" to establish the existence of a medically determinable impairment

"which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a); see also SSR 16-3p, 2017 WL 5180304, at *3. "Objective medical evidence" consists of medical "[s]igns" ("anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements" and that "must be shown by medically acceptable clinical diagnostic techniques," 20 C.F.R. § 416.902(l)) and "[l]aboratory findings" ("anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," 20 C.F.R. § 416.902(g)). See 20 C.F.R. § 416.902(k); see also SSR 16-3p, 2017 WL 5180304, at *3.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of "the intensity and persistence of [the claimant's] symptoms," as well as "the extent to which [those] symptoms limit [his or her] capacity for work." 20 C.F.R. § 416.929(c); see also SSR 16-3p, 2017 WL 5180304, at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4 (emphasis added). Where relevant, the

ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

> 1. [ D]aily activities;
>
> 2. The location, duration, frequency, and intensity of [] pain or other symptoms;
>
> 3. Precipitating and aggravating factors;
>
> 4. The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> 5. Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;
>
> 6. Any measures [a claimant] use[s] or ha[s] used to relieve [] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, or sleeping on a board, etc.); and
>
> 7. Any other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3); see also SSR 16-3p, 2017 WL 5180304, at *7-8. The ALJ cannot "reject [a claimant's] statements about the intensity and persistence of pain or other symptoms or about the effect [those] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 416.929(c)(2) (emphasis added); see also SSR 16-3p, 2017 WL 5180304, at *5.

In this case, the ALJ expressly recognized Plaintiff's testimony "that she is unable to work due to constant knee pain[,]"

"lifting and being on [her] feet cause pain[,]" "[s]he was getting knee injections, but they did not help[,]" "she uses a cane sometimes while going up and down steps, and uses a cart in grocery stores[,]" "if she is on her legs for an extended period of time, her leg swells to the size of a small cantaloupe[,]" "[s]he can stand for 15-20 minutes[,]" and "she is prescribed medications for her knee, which takes the edge off." (Tr. 20 (referencing Tr. 44-50).) The ALJ thereafter found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (id.), but then determined, at part two, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.; see also id. ("[Plaintiff]'s allegations of greater pain, fatigue, and functional limitations are not supported to the extent alleged. The record does not provide convincing evidence from which to conclude [she] has medically determinable impairments that significantly compromises [sic] her functionality and ability to work. Specifically, the objective findings showed that [Plaintiff] is likely to have some pain and limitations, but not to the extent alleged."); Tr. 23 ("The overall evidence shows that further restrictions are neither warranted nor supported. To the extent

that [Plaintiff] testified that she is more limited, that testimony is not consistent with the medical and other evidence of record. For example, there is little to no support in the medical evidence for [her] testimony that she requires a cane or assistive device to ambulate.")). Plaintiff's challenge to the ALJ's reliance on objective findings to discount Plaintiff's subjective symptom reports of knee pain and difficulty standing and walking as "appl[ying] an incorrect legal standard" under Oakes and Arakas (Docket Entry 11 at 7 (quoting Oakes, 70 F.4th at 215, and Arakas, 983 F.3d at 97-98)) fails for the following three reasons.

First, to the extent Plaintiff intends her contention that she could "'rely exclusively on subjective evidence in proving that her symptoms are so continuous and/or severe that they prevented her from working" (id. (brackets and ellipsis omitted) (quoting Oakes, 70 F.4th at 215)) to mean that the ALJ erred by considering objective medical evidence at all in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument lacks merit. Although the Fourth Circuit has "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas, 983 F.3d at 98, long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about

her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Oakes, Arakas, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); see also 20 C.F.R. § 416.929(c) (directing ALJs to consider a claimant's medical history, medical signs and laboratory findings,

daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms). Here, in compliance with Oakes, Arakas, Hines, Craig, and the applicable regulations, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged pain, as the ALJ also considered Plaintiff's daily activities (see Tr. 19, 22), medication and other treatment used to alleviate pain (see Tr. 21-22), and, as discussed in more detail below, the opinion evidence of record (see Tr. 23-25).

Second, Plaintiff's attempt to analogize the facts of her case to those present in Arakas falls short. In that case, the Fourth Circuit deemed fibromyalgia a "unique" disease, Arakas, 983 F.3d at 97, with "symptoms [that] are entirely subjective," id. at 96 (emphasis added), and noted that "physical examinations of patients with fibromyalgia will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," id. (emphasis added) (brackets omitted). The Fourth Circuit thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple medical factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," because "[o]bjective indicators such as normal clinical and laboratory

results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease," id. at 97 (emphasis added). Approximately four years later, the Fourth Circuit extended that holding in Arakas to major depressive disorder ("MDD"). See Shelley C. v. Commissioner of Soc. Sec., 61 F.4th 341, 361-62 (4th Cir. 2023) ("[Symptoms of MDD, like those of fibromyalgia, are '*entirely subjective*,' determined on a case-by-case basis." (emphasis in Shelley C.) (quoting Arakas, 983 F.3d at 96)). Notably, the Fourth Circuit has not extended that holding in Arakas to pain arising from osteoarthritis, and Plaintiff fails to explain how that condition qualifies as a "disease that does not produce [objective] evidence," Arakas, 983 F.3d at 97. (See Docket Entry 11.)

Third, Plaintiff's contention that "the ALJ [] failed to perform a proper function-by-function evaluation of all the contested and relevant functions[,]" such as "how long [Plaintiff] is capable of maintaining a walking or standing position" (Docket Entry 11 at 9 (citing Dowling, 986 F.3d at 388-89, and Holland, 2018 WL 1970745, at *10)) fares no better. As to the role of the function-by-function analysis in the RFC determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis[ and,] . . . [o]nly after that[,] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-9p"). The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015).

Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636 (internal quotation marks omitted), but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's abilities to stand and walk on a function-by-function basis (see Tr. 19-25); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods v. Berryhill, 888

F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted), between the evidence and her findings that Plaintiff's osteoarthritis of the left knee (A) qualified as severe impairments at step two of the SEP (see Tr. 16), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of standing and walking (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 19).[8]

In addition to the ALJ's discussion of Plaintiff's daily activities (see Tr. 19 (noting Plaintiff could bathe, groom, prepare meals without assistance), 22 (observing that Plaintiff could fix breakfast, wash clothes, straighten up, hang with her friends, as well as bath, groom, and prepare meals without assistance)), the ALJ's evaluation of the opinion evidence (see Tr. 23-25) provides support for the standing and walking allowances in the RFC. To begin, the ALJ found "more persuasive" (Tr. 24) the opinion of the state agency medical consultant at the reconsideration level of review that Plaintiff remained capable of up to six hours total of standing and walking in an eight-hour

[8] Plaintiff's assertion that the ALJ failed to make any findings regarding "the frequency of position change" Plaintiff's impairments caused (Docket Entry 11 at 9) falls short. Although the ALJ did not make any express finding regarding how long Plaintiff could stand and walk at one time (see Tr. 19), the Commissioner's policy ruling makes clear that such exertional activities would occur in no more than two-hour increments generally with standard breaks, see Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p") (providing that normal workday includes "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

workday (see Tr. 91), because the initial-level consultant's opinion that Plaintiff "could stand and/or walk 4 hours in an 8-hour workday" (Tr. 24 (referencing Tr. 77)) "[wa]s not supported by the current record, including findings from the December 2023 consultative [medical] exam [by Dr. Shelly West] showing an unremarkable physical exam with 5/5 strength in all extremities, intact range of motion and negative straight leg raise" (Tr. 24-25 (referencing Tr. 845-46).)[9] The ALJ additionally found "persuasive" (Tr. 24) the opinion of Dr. West that Plaintiff did not need an assistive device (see Tr. 24 (referencing Tr. 850)).

In light of the foregoing analysis, Plaintiff has not shown that the ALJ failed to properly evaluate Plaintiff's subjective symptom reports, and, thus, Plaintiff's first assignment of error provides no basis for relief.

**2. Opinion Evidence**

In Plaintiff's second and final issue on review, she contends that "the ALJ erred by failing to properly evaluate the medical opinion evidence." (Docket Entry 11 at 10 (bold font and block formatting omitted).) More specifically, Plaintiff faults the ALJ

[9] The ALJ additionally found that "the current record, including [Plaintiff]'s complaints of ongoing knee pain supports greater postural limitations" than found by the reconsideration-level consultant. (Tr. 25; compare Tr. 19 (ALJ's RFC limiting Plaintiff to occasional ramps and stairs, no ladders, ropes, or scaffolds, and occasional kneeling, crouching, and crawling), with Tr. 77-78 (reconsideration-level state agency medical consultant's RFC limiting Plaintiff to frequent ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling).)

for finding "'not persuasive'" (id. (quoting Tr. 24)) the opinion of consultative medical examiner Keisha Dixon, PA-C ("PA Dixon"), "that [Plaintiff] would have limitations with prolonged standing and walking longer than 20 minutes continuously" (id. (citing Tr. 829)) as "not 'quantified' in a 'vocationally relevant manner'" (id. (quoting Tr. 24)). In addition, Plaintiff challenges the ALJ's finding that PA Dixon's "opinion that [Plaintiff] could perform sedentary activity for a few hours per day [wa]s 'vague.'" (Id. (quoting Tr. 24) (referencing Tr. 829).) In Plaintiff's view, "a limitation to standing or walking for 20-minute intervals is stated in vocationally relevant terms, as is a limitation to sedentary work." (Id.) Plaintiff further objects to the ALJ's reliance on Dr. West's consultative examination as a basis to discount the persuasiveness of the initial-level state agency medical consultant's opinion that Plaintiff could stand and walk up to four hours in an eight-hour workday (see id. at 11 (citing Tr. 24-25 (in turn, referencing Tr. 845-46), 77), because "Dr. [] West also found that [Plaintiff] could not stand for long periods of time" (id. (citing Tr. 849)). For the following reasons, Plaintiff's contentions miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 160-66)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis," and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 416.920c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 416.920c(b)(2).[10] The ALJ must discuss the three other persuasiveness factors — the

[10] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(2).

nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 416.920c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 416.920c(b)(3).

On January 23, 2023, PA Dixon conducted a consultative medical examination of Plaintiff, at which PA Dixon noted that Plaintiff had tenderness and reduced range of motion in her cervical and lumbar spines, tenderness and reduced range of motion in her hips, reduced range of motion in her right shoulder and knees, and had some difficulty standing from a seated position, but had intact cranial nerves, reflexes, pulses, and strength, could walk heel to toe, and had a negative straight leg raise test. (See Tr. 828.) Additionally, PA Dixon observed that, although Plaintiff used "a cane for ambulation" at the examination, her "gait [was] normal." (Tr. 832.) PA Dixon diagnosed Plaintiff with "chronic . . . low back pain," "chronic bilateral knee pain," "a history of torn meniscus[, ] osteoarthritis and persistent swelling" in her left knee, and "obes[ity]." (Tr. 828.) As a result of those impairments, PA Dixon opined that Plaintiff's "[c]urrent occupational limitations include[d] pain with prolonged standing, walking longer than 20 min[utes] continuously; [and] pain with any repetitive kneeling, squatting, stairs[,]" as well as that

Plaintiff "could perform sedentary activity for a few hours a day." (Tr. 829 (space added).)

The ALJ discussed PA Dixon's findings on examination (see Tr. 21), summarized PA Dixon's opinions (see Tr. 24), and provided the following analysis of the persuasiveness of those opinions:

> The [ALJ] finds this opinion unpersuasive. It does not quantify the exertional limitations in a vocationally relevant manner. Additionally, the term "repetitive" is not vocationally relevant, as it does not describe the frequency with which the postural activities can be performed. The opinion that [Plaintiff] can perform sedentary activity for a few hours a day is vague.

(Id. (emphasis added).) As the following discussion shows, the ALJ did not err in her evaluation of PA Dixon's opinions.

Plaintiff first argues that the ALJ erred by finding PA Dixon's exertional limitations not vocationally relevant, because "a limitation to standing or walking for 20-minute intervals is stated in vocationally relevant terms." (Docket Entry 11 at 10 (citing Tr. 829).) Plaintiff's argument glosses over the fact that PA Dixon did not limit Plaintiff to standing and/or walking in 20-minute intervals; rather, PA Dixon found that Plaintiff would experience "pain with prolonged standing[ and] walking longer than 20 min[utes] continuously." (Tr. 829 (emphasis and space added).) As the Commissioner points out (see Docket Entry 14 at 16), a finding that an activity would cause an individual pain does not equate to an opinion regarding "the most [that individual] can still do despite [her] impairments," 20 C.F.R. § 416.945(a). See

Jackson v. Kijakazi, No. 1:20CV124, 2021 WL 3861373, at *5 (M.D.N.C. Aug. 30, 2021) (unpublished) (holding that medical "opinion that prolonged weight bearing would likely aggravat[e the plaintiff's] ankle pain d[id] not amount to a definitive statement that [the p]laintiff's ankle impairment prevent[ed] her from engaging in such weight bearing" (internal quotation marks and ellipsis omitted)), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2021) (Tilley, S.J.); see also Ferrante v. Bowen, 869 F.2d 593 (4th Cir. 1989) ("'[D]isability requires more than mere inability to work without pain.'" (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983))); Allison v. Colvin, No. 5:16CV12, 2016 WL 11268487, at *4 (W.D.N.C. Aug. 30, 2016) (unpublished) ("An RFC does not identify limitations that would result in a pain-free workday."), recommendation adopted, 2017 WL 445231 (W.D.N.C. Jan. 30, 2017) (unpublished); Green v. Astrue, No. 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (unpublished) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), recommendation adopted, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011) (unpublished).

Plaintiff additionally asserts that, contrary to the ALJ's finding (see Tr. 24), PA Dixon's "limitation to sedentary work" contains "vocationally relevant terms" (Docket Entry 11 at 10 (citing Tr. 829)), and contends that "there is nothing vague about [Plaintiff] being limited to working at the sedentary range of

exertion, without regard to how long she could maintain th[at] work" (id. at 10-11). The ALJ did not err in finding "vague" (Tr. 24) PA Dixon's statement regarding Plaintiff's ability to perform "sedentary activities for a few hours a day" (Tr. 829 (emphasis added)), because PA Dixon quantified neither for how many hours Plaintiff could perform sedentary activities, nor which sedentary activities Plaintiff could perform, i.e., lifting, carrying, sitting, standing, and/or walking (see id.). Acosta v. Commissioner of Soc. Sec., Civ. No. 17-12414, 2018 WL 7254256, at *10 (E.D. Mich. Sept. 6, 2018) (unpublished) (holding that "opinions regarding the plaintiff's functioning, such as that she is severely limited in performing sedentary activity and that extended sitting or standing would lead to increased pain either a few times a week or a few times a month, are so vague that they do not reasonably inform [the] plaintiff's functional abilities" (internal quotation marks omitted)), recommendation adopted, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) (unpublished).[11]

[11] Significantly, although the ALJ did not rely on this basis in her assessment (see Tr. 24), PA Dixon's opinion that Plaintiff "could perform sedentary activity for a few hours a day" (Tr. 829) clearly qualifies as a "[s]tatement[] about what [Plaintiff's RFC] is using [the SSA's] programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of [a] description[] about [Plaintiff's] functional abilities and limitations," 20 C.F.R. § 404.1520b(c)(3)(v) (emphasis added). The regulations deem such "[s]tatements on issues reserved to the Commissioner," 20 C.F.R. § 404.1520b(c)(3), "inherently neither valuable nor persuasive to the issue of whether [Plaintiff is] disabled . . . under the Act," 20 C.F.R. § 404.1520b(c), and thus did not require the ALJ to "provide any analysis about how [she] considered such evidence in [the] determination or decision," 20 C.F.R. § 404.1520b(c) (emphasis added). Moreover, courts that have considered medical source statements that a claimant could not perform even a full range of sedentary work (such as PA Dixon's statement (see Tr. 829)) have consistently

Lastly, Plaintiff challenges the ALJ's decision to discount the initial-level state agency medical consultant's opinion that Plaintiff could stand and/or walk up to four hours in an eight-hour workday (see Docket Entry 11 at 11 (citing Tr. 24-25 (in turn, referencing Tr. 77))), because findings from Dr. West's December 2023 consultative medical examination did not support the state agency medical consultant's opinion (see id. (citing Tr. 24-25 (in

---

held that such statements do not constitute "medical opinions" under the new regulations (and even under the prior definition of "medical opinion" applicable to claims filed before March 27, 2017), because they amount to statements that a claimant cannot work, rather than opinions setting forth specific functional limitations. See, e.g., Mitchell v. Kijakazi, No. 23CV60321, 2023 WL 6907806, at *4 (S.D. Fla. Oct. 19, 2023) (unpublished) ("[The treating physician's] statement regarding [the p]laintiff's inability to perform even sedentary work either does not qualify as a medical opinion, or at the very least, is a statement on an issue reserved to the Commissioner. . . . [B]y opining that [the p]laintiff could not perform work even at the sedentary level (the lowest exertional level), [the physician] effectively opined that [the p]laintiff is unable to work. Moreover, [the physician] used a programmatic term regarding [the p]laintiff's functional exertional level rather than describing any of [the p]laintiff's functional abilities or limitations."); Hicks v. Commissioner of Soc. Sec. Admin., No. 3:21CV113, 2022 WL 3282273, at *13 (N.D. Ohio May 25, 2022) (unpublished) (holding that ALJ's finding that "doctor's statement that the claimant [wa]s . . . unable to perform even sedentary work" did not qualify as medical opinion "consistent with the governing regulations") (objections to recommendation pending); Tatum v. Commissioner of Soc. Sec., No. 1:19CV1263, 2020 WL 7640588, at *13 (E.D. Cal. Dec. 23, 2020) (unpublished) (finding no error in ALJ's rejection of treating physicians' statements "that [the p]laintiff could not sustain even sedentary work activity," because such statements "are not medical opinions, but are opinions on issues reserved for the Commissioner"); Hounchell v. Commissioner of Soc. Sec., No. 1:15CV660, 2016 WL 8667829, at *8 (S.D. Ohio Oct. 7, 2016) (unpublished) (holding that psychiatrist's statement that the plaintiff "[wa]s unable to perform even sedentary work" constituted not a "medical opinion[,] . . . but instead [an] issue[] reserved to the Commissioner"), recommendation adopted, 2016 WL 6395819 (S.D. Ohio Oct. 28, 2106 (unpublished); Phillips v. Colvin, No. 1:13CV3321, 2014 WL 6455395, at *15 (D.S.C. Nov. 13, 2014) (unpublished) ("[The physician]'s opinions that [the p]laintiff's complaints were severe enough to preclude even sedentary work on a full-time basis . . . addressed an issue reserved to the Commissioner because, if accepted, they would be dispositive of the claim."); Koerner v. Astrue, No. 1:09CV111, 2010 WL 3221912, at *6 (W.D. Ky. June 3, 2010) (unpublished) (deeming physician's statement that "even sedentary work would cause [the plaintiff] to have significant pain and discomfort . . . not [a] genuine medical opinion[] . . . entitled to any special significance" (brackets and internal quotation marks omitted)), recommendation adopted, 2010 WL 3221910 (W.D. Ky. Aug. 13, 2010) (unpublished).

turn, referencing Tr. 845-46))). According to Plaintiff, "Dr. [] West also found that [Plaintiff] could not stand for long periods of time" (id. at 11 (citing Tr. 849)) and, thus, "it was improper for the ALJ to use [Dr. West's] assessment to contradict the state agency [medical] consultant when Dr. West arrived at a similar conclusion based on the examination and the available evidence" (id.). As argued by the Commissioner, however, "Dr. West's conclusion was only that Plaintiff had a 'mild' limitation in standing and walking on her scale of 'Mild/Moderate/Severe'" (Docket Entry 14 at 17 (quoting Tr. 849)), and "[a]t no point did Dr. West *opine* that Plaintiff could not stand for a long period of time" (id. (emphasis added by the Commissioner)). Indeed, Dr. West's statement that Plaintiff "can't stand for long periods of time due to left knee swelling and she has a torn meniscus" appears in a portion of Dr. West's report where she clearly lists Plaintiff's subjective symptom reports, such as that Plaintiff "woke up one morning and her knee was hurting." (Tr. 829.)

Put simply, Plaintiff has not demonstrated that the ALJ reversibly erred with respect to her evaluation of the opinion evidence.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 29, 2026